IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CV-412

| | | |
|---|---|---|
| JANE CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FIDELITY LIFE ASSOCIATION | ) | |
| | ) | |
| Defendant. | ) | |

On July 12, 2017, Jane Carter ("Carter" or "plaintiff") sued Fidelity Life Association ("Fidelity" or "defendant") for breach of contract in Wayne County Superior Court [D.E. 1-1]. On August 11, 2017, Fidelity removed the action to this court [D.E. 1]. On December 1, 2017, Fidelity moved for judgment on the pleadings [D.E. 13]. On January 22, 2018, Carter responded in opposition [D.E. 15]. On February 5, 2018, Fidelity replied [D.E. 16]. As explained below, the court grants Fidelity's motion for judgment on the pleadings.

I.

Fidelity issued two life insurance policies to William Kearney (the "insured"). See Compl. [D.E. 1-1] ¶ 4; Answer [D.E. 9] ¶ 4. Carter is the record beneficiary. See [D.E. 9-1] 9, 18. The policies cover accidental deaths and provide that "[u]pon receipt of due proof of the Accidental Death of the Insured while coverage on such Insured is in force, Fidelity Life Association will pay the Death Benefit of this policy if the Insured dies solely as a result of injuries." Id. at 2, 11; see Compl. ¶ 5. The policies, however, include numerous exceptions to coverage including a "blood alcohol exclusion" that applies when the insured dies while "operating a motor vehicle and is

determined to have a blood alcohol level exceeding the legal limit as defined by state law." [D.E. 9-1] 8, 17.

On July 11, 2016, the insured was operating an all-terrain vehicle ("ATV") on a public road in Pikeville, North Carolina. See [D.E. 9-2] 6. The insured crashed the ATV vehicle and died from blunt head trauma. See id. at 6, 9. Thereafter, Carter submitted claims under the life insurance policies. See [D.E. 1-1] ¶ 9. Fidelity denied the claims and invoked the "blood alcohol exclusion" to the policies because the insured's blood alcohol level was 0.21 when he crashed the ATV. See id.; [D.E. 13] 3 n.2.

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002). The court may consider the pleadings and any materials referenced in or attached to the pleadings, which are incorporated by reference. See Fed. R. Civ. P. 10(c); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may consider "matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

The same standard of review applies under Rule 12(b)(6) and Rule 12(c). See, e.g., Burbach

2

Broad. Co. of Del., 278 F.3d at 405–06. When a court reviews a motion for judgment on the pleadings, it must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015); Burbach Broad. Co. of Del., 278 F.3d at 406. Nevertheless, when analyzing a motion for judgment on the pleadings, a court must determine whether a pleading is legally and factually sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–70 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Thus, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. Moreover, a court need not accept a pleading's legal conclusions drawn from the facts. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted).

This court has subject-matter jurisdiction based on diversity. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Fidelity's motion for judgment on the pleadings requires the court to consider the parties' state-law claims and defenses, and the parties agree that North Carolina law applies. Accordingly, the court applies North Carolina law, and the court must determine how the Supreme Court of North Carolina would rule. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North Carolina] has spoken neither directly nor indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the

issue." Id. (quotation omitted).[1] In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. See id.

Under North Carolina law, interpreting a written insurance contract is a question of law for the court. See Briggs v. Am. & Efird Mills, Inc., 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299–30, 524 S.E.2d 558, 563 (2000) (quotation omitted); see Plum Props., LLC v. N.C. Farm Bureau Mut. Ins. Co., 802 S.E.2d 173, 175 (N.C. App. 2017); Mizell, 138 N.C. App. at 532–33, 530 S.E.2d at 95. A court may engage in judicial construction where the language used in the policy is ambiguous. See Mizell, 138 N.C. App. at 532, 530 S.E.2d at 95. Courts construe ambiguities against the insurer and in favor of the insured. See id. Language is not ambiguous, however, "simply because the parties contend for differing meanings to be given to the language." Id., 530 S.E.2d at 95.

Fidelity seeks a judgment on the pleadings that it is not liable to pay Carter benefits under the life insurance policies. In support, Fidelity cites the "blood alcohol exclusion" in the policies. It provides "[n]o Accidental Death Benefit . . . will be payable if the Insured's death results directly or indirectly from . . . [d]eath while the Insured is operating a motor vehicle and is determined to have a blood alcohol level exceeding the legal limit as defined by state law." [D.E. 9-1] 8, 17. The parties do not dispute that the North Carolina legal blood alcohol limit is .08, or that the insured's

---

[1] North Carolina does not have a "mechanism . . . to certify questions of state law to its Supreme Court." Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

blood alcohol level was 0.21 when he crashed his ATV. See N.C. Gen. Stat. § 20-138.1; [D.E. 13] 3 n.2. The parties dispute, however, whether an ATV is a "motor vehicle" under the policy.

The policy does not define "motor vehicle." Thus, the court must apply the ordinary, non-technical meaning of "motor vehicle." The term "motor vehicle" has an ordinary, non-technical meaning that encompasses the ATV. The dictionary defines "motor vehicle" as "an automotive vehicle not operated on rails; *especially*: one with rubber tires for use on highways." Merriam-Webster Dictionary, Motor Vehicle, https://www.merriam-webster.com/dictionary/ motor vehicle (last visited Apr. 30, 2018); see also *Vehicle,* Black's Law Dictionary (10th ed. 2014) (defining "vehicle" as "[a]n instrument of transportation or conveyance"). Similarly, North Carolina's Motor Vehicle Act defines "motor vehicle" as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23). The Motor Vehicle Act further defines "vehicle" as

> [e]very device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon fixed rails or tracks; provided, that for the purposes of this Chapter bicycles and electric assisted bicycles shall be deemed vehicles and every rider of a bicycle or an electric assisted bicycle upon a highway shall be subject to the provisions of this Chapter . . . .

Id. § 20-4.01(49). The definition contains two exceptions: (1) "a device which is designed for and intended to be used as a means of transportation for a person with a mobility impairment," and (2) "an electric personal assistive mobility device." Id. As evidenced by the exceptions, the Motor Vehicle Act's definition of "vehicle" includes ATVs.

An ATV falls within the ordinary, non-technical definition of "motor vehicle" because it is an automotive vehicle not operated on rails. Moreover, the Motor Vehicle Act specifically defines an ATV as "[a] motorized vehicle . . . ." N.C. Gen. Stat. § 20-4.01(1)(c). Although the Motor

5

Vehicle Act's definition of ATV also states that ATVs are "manufactured for off-road use," and the cited definitions contemplate use of the vehicle on public roadways or highways, such contemplation does not mean that ATVs are not "motor vehicles" when the term is given its ordinary, non-technical meaning. The insured's ATV was an automotive, four-wheeled vehicle that the insured could operate on a public road. Indeed, the insured was operating the ATV on a public road when he crashed. Accordingly, the ordinary, non-technical definition of "motor vehicle" includes the ATV. See Montgomery v. Progressive Advanced Ins. Co., No. 2:14cv231, 2015 WL 1011524, at *6 (E.D. Va. Mar. 6, 2015) (unpublished) (holding that an ATV falls within the normal and customary meaning of the term "land motor vehicle"); Porter v. Buck, No. 7:14CV00176, 2015 WL 788881, at *4 (W.D. Va. Feb. 24, 2015) (unpublished) (holding that an ATV is a "motor vehicle" under the common definition of "motor vehicle"); Martin v. GEICO, No. 3:12-cv-0060-RRB, 2013 WL 12092508, at *3 (D. Alaska Mar. 15, 2013) (unpublished) (same); Paskiewicz v. Am. Family Mut. Ins. Co., 349 Wis. 2d 515, 519–522, 834 N.W.2d 866, 867–69 (2013) (applying the common definition of "motor vehicle" and holding that an ATV was a "land motor vehicle" under the terms of an insurance policy that did not otherwise define the term "motor vehicle"); see also Colwell v. State Farm Mut. Auto. Ins. Co., 123 Ariz. 447, 448, 600 P.2d 751, 752 (1979) ("We have little difficulty in holding that the common sense definition of the term 'land motor vehicle' would include" a gasoline-powered mini-bike).

In opposition, Carter cites State Auto Mutual Insurance Company v. Hoyle, 106 N.C. App. 199, 415 S.E.2d 764 (1992). In Hoyle, the North Carolina Court of Appeals considered whether a motorized go-cart was a "motor vehicle" under a homeowner's policy that excluded coverage for personal liability arising out of "ownership, maintenance, [or] use . . . of motor vehicles." See Hoyle, 106 N.C. App. at 200–01, 415 S.E.2d at 765. The policy did not define "motor vehicle."

6

See id. at 201, 415 S.E.2d at 765. However, the policy included a provision stating that the motor vehicles exclusion does not apply to "a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and (a) not owned by an insured; or (b) owned by an insured and on an insured location." Id. at 201, 415 S.E.2d at 765. The insurance company argued that a go-cart was a "motor vehicle." See id. at 202, 415 S.E.2d at 766. The North Carolina Court of Appeals examined the policy, a dictionary definition of motor vehicle, and the definitions in the Motor Vehicles Act. See id. at 202–03, 415 S.E.2d at 766. The court concluded that because a go-cart is not subject to motor vehicle registration, not typically suitable for use on public roadways, and is designed for recreational use off public roads, it was not a "motor vehicle" under the policy. See id. at 202, 415 S.E.2d at 766.

Hoyle does not help Carter. Unlike the policy at issue in Hoyle, the policy at issue in this case does not have the additional clarifying language concerning "a motorized land conveyance designed for use off public roads" and "not subject to motor vehicle registration." Moreover, in State v. Green, the Supreme Court of North Carolina held that a farm tractor driven on a public road was a "vehicle" within the meaning of the Motor Vehicles Act, even though the definition of "vehicle" contemplated use on public roads, and farm tractors are not typically operated on public roads. 251 N.C. 141, 144, 110 S.E.2d 805, 808 (1959); see also State v. Crow, 175 N.C. App. 119, 122–23, 623 S.E.2d 68, 70–71 (2005). Here, the court predicts that the Supreme Court of North Carolina would hold that the ATV is a "motor vehicle" under the policy and that the "blood alcohol exclusion" applies.

III.

In sum, the court GRANTS Fidelity's motion for judgment on the pleadings [D.E. 13].

7

SO ORDERED. This 30 day of April 2018.

                                                   JAMES C. DEVER III
                                                   Chief United States District Judge